**Todd A. DIMMIG, Plaintiff–Appellant,**

v.

**Robert "Pete" WAHL, individually and as Sheriff of LaSalle County and LaSalle County, Illinois, a body politic, Defendants–Appellees.**

No. 91–3410.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1992.

Decided Jan. 6, 1993.

Gary R. Garretson (argued), Mueller, Garretson & Wilhelm, Morris, IL, for plaintiff-appellant.

Sarah Hansen Sotos, Janella L. Barbrow (argued), Elizabeth A. Knight, Colleen Considine Coburn, Knight, Hoppe, Fanning & Knight, Des Plaines, IL, for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Todd Dimmig filed suit under 42 U.S.C. § 1983 against defendants Robert "Pete" Wahl, individually and in his capacity as Sheriff, and LaSalle County, Illinois. He seeks money damages for alleged violations of his rights under the First and Fourteenth Amendments to the United States Constitution. The district court dismissed Dimmig's complaint, and he appeals. We affirm.

I.

Dimmig alleges the following facts in his complaint. Robert "Pete" Wahl was (and is) the Sheriff of LaSalle County, Illinois. Pls.Compl. at ¶ 5. As Sheriff, Wahl established a personnel policy ("the policy") for the LaSalle County Sheriff's Department ("the department"). The policy required that the probationary personnel of the department actively participate in Wahl's campaign for re-election as Sheriff. *Id.* at ¶ 1. From October 10, 1989 until approximately July 2, 1990, Dimmig worked as a Probationary Sheriff's Deputy for the department. *Id.* at ¶ 7. In mid-June of 1990, Wahl asked Dimmig to campaign for him to help get him re-elected. *Id.* at ¶ 8. Dimmig refused. On July 2, 1990, Wahl fired Dimmig in retaliation for his refusal to engage in political activity on Wahl's behalf. *Id.* at ¶¶ 9–10.

Dimmig filed suit alleging that the policy itself and Wahl's action against him violated his First Amendment rights. *Id.* at ¶¶ 14–15.[1] After the defendants filed a

---

**1.** The First Amendment provides, in relevant part: "Congress shall make no law ... abridg-

ing the freedom of speech ... or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

motion for judgment on the pleadings, the district court dismissed Dimmig's complaint. Dimmig appeals.

## II.

We review a grant of a motion to dismiss *de novo*. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir.1992). We accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.; Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir. 1991). We are not, however, required " 'to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law.' " *Scott*, 975 F.2d at 368 (quoting *R.J.R. Servs., Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir.1989)). With these standards in mind, we review Dimmig's appeal.

Dimmig claims that he is entitled to relief because the political neutrality of a deputy sheriff is not an appropriate consideration for discharge from employment. Appellant's Brief at 7. We do not agree.

In *Upton v. Thompson*, 930 F.2d 1209 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), we considered two cases, consolidated on appeal, involving two deputy sheriffs in different Illinois counties. The two deputies claimed that their discharges were impermissibly motivated by their respective sheriffs' opposition to their political party affiliations. 930 F.2d at 1210. The deputies in *Upton* alleged that, as deputy sheriffs, the First Amendment protected them from this type of politically-motivated firing. *Id.* We rejected the deputies' claims in *Upton* and instead concluded that "deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies." *Id.* at 1218. *See also Terry v. Cook*, 866 F.2d 373, 377 (11th Cir.1989) (sheriff has absolute authority over deputy sheriffs' appointment and retention and does not violate the First Amendment by discharging deputy sheriffs that did not support his election).

In this case, Wahl used political considerations—Dimmig's refusal to campaign for his re-election—to determine that Dimmig would no longer serve as a deputy sheriff. Dimmig attempts to distinguish *Upton* by noting, correctly, that the deputy sheriffs in *Upton* actively campaigned *against* the sheriff. Here, however, Dimmig remained neutral and campaigned against no one. Appellant's Brief at 16. Dimmig maintains that Wahl discharged him because he (Dimmig) chose to remain politically inactive. *Id.* at 18. This neutrality, he contends, did not affect his loyalty or ability to enforce the law of the State of Illinois as his employer saw fit. *Id.*

Dimmig's attempted distinction from *Upton* lacks merit. We held in that case that Illinois sheriffs do not violate the First Amendment by taking political considerations into account when deciding whether to fire a particular deputy sheriff. *Upton*, 930 F.2d at 1218. The question under this approach, as the Supreme Court has noted, "is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). In *Upton*, we answered this question by holding that "under the First Amendment as interpreted ... a sheriff may use political considerations when determining who will serve as deputy sheriff." *Id.* In this case, Wahl used political considerations in deciding that Dimmig's refusal to campaign on his behalf could hinder the effective performance of the department. As a result, Dimmig's complaint lacks merit because the Constitution permits Wahl to discharge Dimmig for refusing to campaign for him.

## CONCLUSION

The judgment of the district court dismissing Dimmig's complaint is

AFFIRMED.

ESCHBACH, Senior Circuit Judge, dissenting.

As the majority has pointed out in its opinion, the facts of this case differ from

those in *Upton v. Thompson*, 930 F.2d 1209, 1216 (7th Cir.1991). The majority holds that this distinction is inapposite because *Upton* holds that "under the First Amendment as interpreted ... a sheriff may use political considerations when determining who will serve as deputy sheriff." *Id.* at 1218. In this case, Dimmig's complaint alleges that he was discharged for his refusal to actively campaign for the incumbent sheriff. Pls.Compl. at ¶ 9–10. The majority includes such a refusal to campaign within the boundaries of appropriate political considerations that can lead to discharge. In this way, the majority's decision in this case carries the holding in *Upton* too far. A sheriff may now use *Upton* as a tool to compel speech in the form of political activity from his deputies. A result that permits speech to be compelled is strongly repugnant to First Amendment jurisprudence.[1] For this reason, I respectfully dissent.

---

1. *E.g., Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977) ("We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the *right to refrain from speaking at all.*") (emphasis added); *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 633, 63 S.Ct. 1178, 1183, 87 L.Ed. 1628 (1943) ("It would seem that involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence."); *Id.* at 642, 63 S.Ct. at 1187 ("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.").