**Jennie POWELL, Plaintiff,**

v.

**Sean MORRIS, et al., Defendants.**

No. 97–CV–903.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 3, 1998.

David A. Sams, Columbus, OH, for plaintiff.

Winston M. Ford, Mary Beth Foley, Ohio Attorney General, Employment Law Section, Columbus, OH, for defendants.

## OPINION & ORDER

MARBLEY, District Judge.

This cause comes before the Court on Defendants Sean Morris, Mark Schutte, Jeff Wamsley and Ohio Department of Rehabilitation and Correction's Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons set forth below, this motion is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

According to her Amended Complaint, Plaintiff Jennie Powell worked at the Ohio Department of Rehabilitation and Correction ("ODRC") from some undisclosed point until she resigned in February of 1996. It is unclear what Plaintiff's position at ODRC was. From March of 1994 until her resignation in 1996, Plaintiff claims she suffered harassment at ODRC based on her gender and mental condition. Plaintiff claims she suffers from a "major depression and anxiety disorder," which she asserts is a disability. Specifically, Plaintiff alleges "defendants permitted and authorized convicted sex offenders to work unsupervised and unguarded in the same area as plaintiff at the London Correctional Institution while knowing that they presented an imminent risk and danger to plaintiff and without good reason to do so."

The factual basis or Plaintiff's suit can be summarized as six essential allegations. First, Plaintiff claims she was attacked by an inmate who was later allowed to "roam her area at will," and that this episode resulted in Plaintiff "suffering an emotional breakdown when happening upon [the inmate's] presence on a subsequent date." Second, Plaintiff claims all the Defendants permitted two convicted sex offenders to work unguarded in the same area that she worked, that these men sexually harassed her, and that Defendants took no action to end this harassment after she complained of it. Third, Plaintiff asserts Defendants falsely accused her of having an improper relationship with an in-

mate. Fourth, Plaintiff claims that in October of 1995 another convicted sex offender "motion[ed] as is if he would disrobe and masterbate [sic] in her presence," and that Defendants took no actions in response to this incident. Plaintiff claims that all of these incidents, and Defendants failure to redress to them, made her fearful for her safety. Fifth, Plaintiff alleges Defendants retaliated against her "in her work assignments and [ ] subject[ed] her to unfair and disparate treatment" after she complained about her working conditions. Sixth, Plaintiff claims that in light of Defendants' failure to address her concerns, she "saw no choice but to take disability leave and seek disability treatment" and that Defendants' apathy "effectively drove plaintiff off the job."

Based on these events, Plaintiff filed a Complaint against Defendants ODRC, Sean Morris, Mark Schutte and Jeff Wamsley on August 8, 1997, and filed an Amended Complaint on October 30, 1997. Plaintiff alleges sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) *et seq.*, and Ohio Revised Code § 4112.02; disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, and Ohio Revised Code § 4112.02; conspiracy under 42 U.S.C. § 1985; wrongful discharge; intentional infliction of emotional distress; employment intentional tort; and tortious interference with employment relations. Plaintiff seeks special, compensatory and punitive damages "in a combined amount in excess of one hundred thousand dollars," costs and attorney's fees, pre-judgment and post-judgment interest and such other relief as the Court deems appropriate.

Defendants now move the Court to dismiss Plaintiff's Amended Complaint, claiming (1) Plaintiff failed to comply with minimum pleading requirements; (2) Eleventh Amendment Immunity precludes Plaintiff's section 1985 claim; (3) there is no individual liability under the ADA; (4) Plaintiff fails to state a claim under the ADA; (5) Plaintiff fails to state a claim under section 1985; and (6) this Court lacks jurisdiction over Plaintiff's state law claims.[1]

### MOTION TO DISMISS STANDARD

In considering a Rule 12(b)(6) motion to dismiss, this Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 724 (6th Cir.1996), quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the defendant's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994). While liberal, this standard of review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

### ANALYSIS

#### I. Timeliness of Pleadings

As a threshold matter, this Court *will* consider Plaintiff's Memorandum Contra Defendants' Motion to Dismiss Amended Complaint in evaluating the present motion to dismiss. Defendants have moved to strike Plaintiff's Memorandum Contra because Plaintiff filed it on March 27, 1998, almost four months after Defendants' November 10,

---

1. This Court assumes Defendants Motion to Dismiss Plaintiff's Amended Complaint supersedes their prior Motion to Dismiss Plaintiff's Complaint. Therefore, the Court will only address the arguments set forth in the later Motion To Dismiss Plaintiff's *Amended* Complaint.

1997 Motion to Dismiss. This delay violates S.D. Ohio Local Rule 7.2(a)(2), which states:

Any memorandum in opposition shall be served and filed with in twenty-one (21) days from the date of service set forth in the certificate of service attached to the Motion. Failure to file a memorandum in opposition may be cause for the Court to grant any Motion as filed, other than one which would result directly in entry of final judgment or award of attorney fees.

Defendants argue Plaintiff's delay in responding should result in a complete dismissal of this action. This Court disagrees. First, Local Rule 7.2(a)(2) is permissive, not mandatory; whether to strike Plaintiff's response is within the sound discretion of this Court. Second, as the Rule itself states, a motion may not be granted by default if such grant would result in a final judgement. Granting Defendants' Motion to Dismiss Plaintiff's Amended Complaint would result in a final judgment in this case. This Court does not condone tardiness in pleading, and admonishes counsel to work within the deadlines determined by the Local Rules. Defendants have not suffered undue prejudice from this delay, however, and this Court is not willing, nor does it have the authority, to apply the draconian measure proposed by Defendants.

Defendant's Motion to Strike is **DENIED**.

## II. Pleading Requirements

Defendants move to dismiss Plaintiff's complaint for defective pleading. Defendants argue that Plaintiff's Amended Complaint is not "short and plain," as set out in Fed.R.Civ.P. 8(a)(2), nor "simple, concise or direct," as set out in Fed.R.Civ.P. 8(e)(1). Further, Defendants contend, Plaintiff has not complied with Fed.R.Civ.P. 10(b), which states that all claims shall be "made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances."

### A. Rules 8(a) and 8(e)(1)

This Court agrees that parts of Plaintiff's Amended Complaint are not drafted with the succinctness that one might desire. And it is true that a complaint which merely enumerates the legal elements of a claim, without alleging any factual basis for the charges, cannot survive a motion to dismiss. In her Amended Complaint, however, Plaintiff sets forth in Paragraph Six the specific factual bases for her several claims. This statement of the facts, in combination with the subsequent recitation of legal theories, is enough to sustain Plaintiff's Complaint beyond a wholesale motion to dismiss. The Sixth Circuit has held that, to meet the requirements of Rule 8(a)(2), "[a]ll a complaint need do is afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir.1988). Plaintiff's statement of facts and her identification of the legal theories provides Defendants adequate notice of the nature and basis of her claims.

### B. Rule 10(b)

Defendants rely upon Rule 10(b), which provides, in relevant part, "[e]ach claim founded upon a separate transaction or occurrence and each defense other than denial shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matter set forth." Fed. R.Civ.P. 10(b). The purpose of this rule is to facilitate clarity and succinctness in pleading. Defendants argue it is not clear from plaintiffs complaint exactly what claims are supported by which set of circumstances.

While Plaintiff's complaint would be improved if she divided certain long paragraphs into smaller, more easily digestible pieces, the essential meaning of her Complaint is apparent, and this failure to organize properly does not warrant the harsh remedy of dismissal.

### III. 42 U.S.C. § 1985

Plaintiff claims that all of the Defendants conspired to violate her civil rights, in contravention of 42 U.S.C. § 1985, through negligent hiring, training and supervision policies. Defendants move to dismiss this charge, arguing, *inter alia*, that Plaintiff's claims are foreclosed by the "intracorporate conspiracy" doctrine. Defendants are correct.

■ To sustain a cause of action under § 1985, Plaintiff must prove the existence of a conspiracy among "two or more persons." The Sixth Circuit has held, however, that "[i]f all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 839–40 (6th Cir.1994), quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 510 (6th Cir.1991). That is, "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hull v.* 926 F.2d at 509. *See also Doherty v. American Motors Corporation,* 728 F.2d 334, 339 (6th Cir.1984); *Brace v. Ohio State University,* 866 F.Supp. 1069, 1075 (S.D.Ohio 1994); *Harris v. Bd. of Educ. of Columbus, Ohio, City Sch. Dist.,* 798 F.Supp. 1331, 1345–46 (S.D.Ohio 1992). There is no conspiracy under § 1985 where, as here, the conduct alleged is that of a single corporation acting through its own employees.

■ While this Court notes the "scope of employment" exception to the intracorporate conspiracy doctrine, which "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place," *Johnson,* 40 F.3d at 840, this exception is not applicable to the present case. Plaintiff has not made any allegation that the individual Defendants were acting outside the scope of their employment. In fact, in Paragraph Five of her Amended Complaint, Plaintiff explicitly states Defendants violated her right "while acting in either the direct or indirect interest of" Defendant ODRC. Therefore, the "scope of employment" exception to the intracorporate conspiracy doctrine is inapplicable to the present action.[2]

Defendants' Motion to Dismiss Plaintiff's § 1985 claim is **GRANTED.**

2. The fact that Plaintiff is suing the individual Defendants in their individual as well as official capacities does not change this analysis. As noted in *Harris,* merely suing defendants in their individual capacities "is not is not enough to

### IV. Americans with Disabilities Act

■ Defendants move to dismiss Plaintiff's ADA claims because of insufficient pleading. As Defendants point out, the Sixth Circuit has stated that, in order to withstand a Rule 12(b)(6) motion, a complaint must contain either direct or inferential allegations regarding all of the material elements of some viable legal claim or theory. *See LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995). This standard, however, rather than mandating that this Court dismiss Plaintiff's ADA claim, supports her claim.

In her Amended Complaint, Plaintiff asserts that she is "a qualified disabled person with a handicap as defined under federal and state law by virtue of the fact that suffered [sic] from a mental disorder, to wit: major depression and anxiety disorder, which interfered with her performance of her job therewith" and that Defendants "with knowledge of plaintiff's handicap and sex and on account thereof, purposely ... disriminate[d] against plaintiff with respect to tenure, terms, conditions, or privileges of employment." Defendants argue this pleading is not specific enough to state an ADA claim.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A person seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the Act; (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) that she suffered an adverse employment decision because of her disability. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1179 (6th Cir.1996). Defendants dispute that Plaintiff has properly alleged that she is a disabled person under the ADA. The ADA provides that the term "disability" means: (A) a physical or mental impairment that substantially limits one or more of the major life activities

make them persons separate from the corporation in legal contemplation. The plaintiff must also allege (and prove) that they acted other than in the normal course of their corporate duties." 798 F.Supp. at 1346.

of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff's claim falls under the first of these definitions. Although the ADA does not define "major life activities," the Equal Employment Opportunity Commission ("EEOC") regulations interpret the term as including "functions such as caring for oneself, performing manual tasks, walking, seeing hearing, speaking breathing, learning, and *working.*" 29 C.F.R. § 1630.2(i) (emphasis added).

Defendants claim that because Plaintiff did not specifically allege in her complaint that her disability substantially limits a major life activity, her ADA complaint must be dismissed. This argument is not supported by the liberal pleading rules of the Federal Rules of Civil Procedure. The Sixth Circuit has long recognized that a complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102; *accord Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). In this case, Plaintiff has pled facts to support her claim that her mental disability interfered with her ability to do her job. Such averments could demonstrate a level of interference extreme enough to support a claim that a major life function—Plaintiff's ability to work—was substantially impaired. Although Plaintiff does not invoke the phrase "substantially limit a major life activity," she has put Defendants on notice of what she is suing about: employment discrimination in the form of negligent prisoner policies, based upon Plaintiff's psychological impairment. As the Supreme Court has maintained:

> the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests ... Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley,* 355 U.S. at 47–48, 78 S.Ct. at 103.

Whether Plaintiff can adduce evidence to support her ADA claim is a matter for summary judgment. Her pleading, however, is specific enough to survive Defendants' motion to dismiss. Defendant's Motion to Dismiss Plaintiff's entire ADA claim is therefore **DENIED** as to Defendant ODRC and the individual defendants in their official capacities.

■ There is no individual liability under the ADA. The Sixth Circuit has declared that individuals who do not qualify as "employers" cannot be held liable under Title VII. *See Wathen v. General Electric Co.,* 115 F.3d 400, 403–06 (6th Cir.1997). The *Wathen* court also noted "[t]he liability schemes under Title VII, the ADEA, and the ADA are essentially the same in aspects relevant to this issue." 115 F.3d at 404, n. 6. Based on *Wathen,* this Court recently held that the ADA does not afford individual liability. *See Meekison v. Voinovich,* 17 F.Supp.2d 725 (S.D.Ohio 1998). Therefore, Defendant's motion to dismiss Plaintiff's ADA claims against the individual Defendants in their individual capacities is **GRANTED.**

## V. Jurisdiction over Plaintiff's State Law Claims

Defendants move to dismiss Plaintiff's state law claims because this Court lacks jurisdiction over them. This Court agrees.

First, this Court lacks jurisdiction with regard to Plaintiff's state law claims against Defendants Morrison, Shutte and Wamsley in their individual capacities because of immunity established by Ohio law. When faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given. *See Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir.1989). Civil immunity is granted to officers and employees of the State of Ohio in their individual capacities by virtue of section 9.86 of the Ohio Revised Code:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer of employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev.Code Ann. § 9.86. Further, Ohio law mandates the determination of whether a state employee was acting within the scope of his employment is exclusively the province of the Ohio Court of Claims. Section 2743.02(f) states:

> A civil action against a state officer or employee that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially,whether the officer or employee is entitled to civil immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.

Based on these statutes, the Sixth Circuit has held that "[u]nder Ohio law, then, state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Haynes,* 887 F.2d at 705. Specifically, the *Haynes* court found that a federal court may not exercise pendent jurisdiction over state claims regarding the individual liability of state officials until the Court of Claims has spoken:

> Until the Ohio Court of claims determines that they are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendent jurisdiction. A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law. Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in. Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities. In that regard, the only recognized cause of action lies, initially, against the State of Ohio in the Court of Claims.

*Id.* (Internal citations omitted.)

Accordingly, an Ohio state employee may not be sued in his individual capacity unless and until the Ohio Court of Claims determines he is not entitled to immunity. This Court, therefore, lacks jurisdiction over Plaintiff's state law claims against Defendants Morris, Shutte and Wamsley in their individual capacities.

Further, this Court lacks jurisdiction to hear Plaintiff's state law claims against Defendants in their official capacities. The Eleventh Amendment precludes the assertion of pendent state law claims against state actors in federal courts. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984) ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. We now hold that this principle applies as well to state-law claims brought into federal court under pendent

jurisdiction."); *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1543 (6th Cir. 1994) ("Following *Pennhurst,* we hold that the Eleventh Amendment bars Williams' state law claims insofar as they seek injunctive relief.").

Therefore, Defendants' motion to dismiss Plaintiff's state law claims is **GRANTED**. Plaintiff's state law claims are dismissed without prejudice.

### *CONCLUSION*

For the foregoing reasons, Defendants' Motion to Strike Plaintiff's Response is **DENIED**. Defendants' Motion to Dismiss is **DENIED** as it relates to: Plaintiff's failure to comply with minimum pleading requirements; and Plaintiff's ADA claim against Defendant ODRC. Defendants' Motions to Dismiss is **GRANTED** as to: (1) Plaintiff's ADA claims against the individual Defendants in their individual capacities; (2) Plaintiff's 42 U.S.C. § 1985 claim; and (3) Plaintiff's state law claims for lack of jurisdiction.

**IT IS SO ORDERED.**